UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

TERESA GAIL BELCHER,

    Plaintiff,

v.  Civ. No. 13-00284-MV-LAM

CARLSBAD MEDICAL CENTER, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 40]. The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that Defendant's Motion will be granted in part.

## BACKGROUND

Plaintiff Teresa Gail Belcher ("Belcher") was employed by Carlsbad Medical Center, LLC ("Defendant") from 1990 until January 21, 2011, at which point her employment was terminated by Defendant. Prior to her termination, Belcher applied for and was granted Family Medical Leave on August 31, 2010 in order to provide for a recuperation period which would result from anticipated foot surgeries for bunions on both her left and right feet.

The second surgical procedure took place in December, 2010. Belcher contacted Defendant in early January, 2011 and told Defendant that she had a doctor's appointment on January 20, 2011 to be cleared to return to work. Belcher rescheduled her January 20, 2011 appointment with her physician to January 30, 2011 at the request of her physician's office. On January 19, 2011, Belcher left a voicemail for her supervisor the Director of Radiology, Joe Moore ("Moore"), informing him that her physician's appointment had been rescheduled. On

1

January 21, 2011 Belcher was called by Defendant's Human Resources Director, Kim Smith ("Smith"), who told Belcher that she was fired.

On March 25, 2013, Belcher filed a Complaint in state court alleging that:

(Count I) Defendant breached Belcher's implied contract by failing to follow the policies and procedures regarding leave as set forth in Defendant's handbook;

(Count II) violated the New Mexico Human Rights Act by intentionally discriminating against Belcher by terminating her employment as a result of her serious medical condition and by failing to provide Belcher with reasonable accommodations for her medical condition;

(Count III) violated the Americans with Disabilities Act ("ADA") by discriminating against Belcher in the terms, conditions or privileges of Belcher's employment by terminating Belcher's employment due to disability, discriminating against Belcher in the terms, conditions or privileges of Belcher's employment because Defendant regarded Belcher as disabled, failing to provide a reasonable accommodation or otherwise make available provision to Belcher as required by the ADA;

(Count IV) intentionally inflicted emotional distress through the extreme and outrageous conduct of Defendant's termination of Belcher;

(Count V) intended to deceive Belcher and to induce Belcher to rely upon its misrepresentations with regard to the approval of her leave and with regard to the request by Defendant that the surgeries be scheduled back-to-back, thereby constituting negligent or intentional misrepresentation;

(Count VI) caused Plaintiff intentional injury as a direct and proximate result of Defendant's actions due to the deprivation of economic and noneconomic benefits thereby constituting a prima facie tort.

On March 26, 2013, Defendant filed a Notice of Removal based on federal question jurisdiction because Belcher's Americans with Disabilities Act claims arise under the laws of the United States. Thus, this Court has original jurisdiction under 28 U.S.C. § 1331 and removal is proper pursuant to 28 U.S.C. § 1441(a).[1]

---

[1] This Court may exercise supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same transaction and occurrence as Belcher's federal claims such that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

On January 23, 2014, Defendant filed a Motion for Summary Judgment and Memorandum in Support in their favor on Counts I through VI.

## **LEGAL STANDARD ON RULE 56 MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Davis v. Unified School Dist. 500,* 750 F.3d 1168, 1170 (10th Cir. 2014). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003). The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts … where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Scott v. Harris,* 550 U.S. 372, 381 (2007). The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' and designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted).

Upon a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tolan v. Cotton,* 134 S.Ct.

1861, 1863 (2014) (quoting *Anderson*, 477 U.S. at 255).  If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.  *See Celotex*, 477 U.S. at 322.

## LEGAL STANDARD ON ADA CLAIMS

The ADA prohibits employment discrimination against "a qualified individual on the basis of disability" with regard to "the hiring, advancement, or discharge of employees… and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless the employer demonstrates that the accommodation would impose an "undue hardship" on the operation of their business.  42 U.S.C. § 12112(b)(5)(A).

The Court evaluates ADA discrimination claims under the burden shifting framework set forth in *McDonnel Douglas Corp. v. Green,* 411 U.S. 792, 93 (1973).  See *E.E.O.C. v. C.R. England, Inc.,* 644 F.3d 1028, 1038 (10th Cir. 2011).  Under this framework, Belcher bears the initial burden of establishing a prima facie case of discrimination.  If she is able to make such a showing, the burden would shift to Defendant "to articulate some legitimate, nondiscriminatory reason" for its actions.  Belcher would then bear the ultimate burden of showing that Defendant's proffered reason is in fact a pretext designed to mask discrimination.  *See McDonnel Douglas,* 411 U.S. at 802, 804.

To establish a *prima facie* case of discrimination under the ADA, Belcher must show that, at the time she was fired, (1) she was a disabled person as defined by the ADA; (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) she was fired because of her disability.  *Carter v. Pathfinder Energy Services, Inc.,*

662 F.3d 1134, 1142 (10th Cir. 2011). Belcher bears the burden of raising a genuine issue of material fact on each element of her prima facie case. *Doyal v. Oklahoma Heart, Inc.,* 213 F.3d 492, 495 (10th Cir.2000).

To show pretext, Belcher must establish by a "preponderance of the evidence that the legitimate reasons offered by [Defendant] were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "[A] plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are 'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief.'" *Johnson v. Weld Cnty.,* Colo., 594 F.3d 1202, 1211 (10th Cir.2010) (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir.2008)); *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir.2007) ("A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." (quoting *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir.2003)) (internal quotation marks omitted). Further, as a general rule, Belcher must "proffer evidence that shows each of the employer's justifications are pretextual." *Johnson,* 594 F.3d at 1212 (quoting *Jaramillo v. Colo. Judicial Dep't,* 427 F. 3d 1303, 1309-10 (10th Cir.2005).

**Whether a person is disabled as defined by the ADA**

A person is disabled under the ADA if she: (A) has a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) has a record of such an impairment; or (C) is regarded as having such impairment. 42 U.S.C. § 12102(1). "[T]o establish an ADA disability under subsection (A), our precedent indicates that a plaintiff must

"articulate with precision" both her impairment and the major life activity it substantially limited." *Johnson,* 594 F.3d at 1218 (10th Cir. 2010).

An individual may satisfy the meaning of "regarded as having a disability" under subsection (C) in three ways:

> (1) the individual may have an impairment that is not substantially limiting but is perceived by the defendant as constituting a substantially limiting impairment; (2) the individual may have an impairment that is substantially limiting only because of the attitudes of others toward the impairment; or (3) the individual may have no impairment at all but is regarded by the defendant as having a substantially limiting impairment.

*Berry v. T-Mobile USA, Inc.,* 490 F.3d 1211, 1218 (10th Cir. 2007)(citing 29 C.F.R. § 1630.2(1)). Further, subsection (C) "shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Whether a plaintiff has a recognized impairment and identifies one or more major life activities are questions of law for the court to determine. *Carter,* 662 F.3d at 1142 (10th Cir. 2011). After it has been determined that a plaintiff has a recognized impairment and also has identified one or more major life activities, it must be determined whether the impairment substantially limits a major life activity. The question of whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury. *Id.*

A disability exists under the ADA only where a physical or mental impairment "substantially limits" a major life activity. 42 U.S.C. § 12102(1)(A). The ADA does not define the term "substantially limits," however, the Tenth Circuit has held that "[a]n impairment is substantially limiting when it renders an individual either unable or significantly restricted in her ability to perform a major life activity compared to the average person in the general population." *Carter,* 662 F.3d at 1143 (quoting *Johnson,* 594 F.3d at 1218).

**Physical or mental impairment**

The ADA does not define the term "physical or mental impairment." But a regulation promulgated by the Equal Employment Opportunity Commission has made the relevant inquiry whether a disability "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii); *See Rico v. Xcel Energy, Inc.,* 893 F.Supp.2d 1165, 1168 (D.N.M. 2012). Furthermore, factors that may be considered in determining whether a substantial limitation is present are the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of or resulting from the impairment. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(j)(2).

Thus, "[i]t is clear that a temporary disability does not meet the standards of the ADA; rather, the impairment's impact must ... be permanent or long term." *Prathan v. Autoliv ASP, Inc.,* 117 Fed. App'x 650, 651 (10th Cir. 2004) (quoting *Toyota Motor Mfg. Ky., Inc. v. Williams,* 534 U.S. 184, 198 (2002)). "An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time." *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 467 (4th Cir.2002). "The ADA was not designed to apply to temporary conditions." *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290 (10th Cir.2000). The Tenth Circuit has also asserted that "any temporary condition, such as a wheel chair or crutches post-surgery, does not qualify as a disability [under the ADA]". *Rhodes v. Langston University,* 462 Fed.App'x. 773, 779 (10th Cir.2011).

Specifically, courts faced with the particular question here on similar factual allegations have consistently held that temporary physical limitations and work restrictions due to surgery and rehabilitation do not establish a physical impairment under the ADA. See *Morgan v.*

*Goodwill Industries of Denver, Inc.,* 2013 WL 6728777, *5 (D.Col. Dec. 20, 2013) (finding that temporary physical limitations and work restrictions due to employee's ACL surgery and rehabilitation did not establish that she had an impairment); *Peoples v. Langley/Empire Candle Co.,* 2012 WL 171340, *2 (D.Kan. Jan. 20, 2012) ("[t]emporary disability while recuperating from surgery is generally not considered a disability under the ADA") (citing 42 U.S.C. § 12102(2), (3)(B); *Blackburn v. Trs. Of Guilford Tech. County. Coll.*, 733 F.Supp.2d 659, 663 (M.D.N.C.2010) ("Ordinarily, a temporary impairment due to an injury or illness, including recuperation from surgery, is not sufficient to qualify as a disability under the ADA").

Even more specifically, courts have found that bunions do not render a person disabled under the ADA. *See e.g., Joseph v. N. Shore Univ. Hosp.,* 2011 WL 573582, at *8-*9 (E.D.N.Y. 2011) *aff'd* by 473 Fed. App'x. 34, 36 (2d Cir. 2012)(bunion and toenail pain failed to constitute a disability within subsection (A) of the disability definition under the ADA); *Brower v. Continental Airlines, Inc.,* 62 F. Supp.2d 896, 904 (E.D.N.Y. 1999)(holding that plaintiff who had suffered since birth with bunions was not disabled within subsection (A) of the disability definition under the ADA).

## **DISCUSSION**

Belcher failed to establish that her bunions constituted a disability under the ADA because she failed to articulate with precision how her bunions were an impairment or how they substantially limited any major life activity as compared to most people in the general population. *See Johnson,* 594 F.3d at 1218; ("[T]o establish an ADA disability under subsection (A), our precedent indicates that a plaintiff must "articulate with precision" both her impairment and the major life activity it substantially limited. An impairment is substantially limiting when it renders an individual either unable or significantly restricted in her ability to perform a major life

activity compared to the average person in the general population."); 29 C.F.R. § 1630.2(j)(ii); See *Rico*, at 1168 (D.N.M. 2012) (The relevant inquiry is whether a disability "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population").

In Belcher's Response, she alleges that her bunions were interfering with her ability to walk. The only support that Belcher provides for this assertion is the testimony of Christina Beasley ("Beasley"), the former Director of Human Resources for Defendant, who stated that Belcher was "having problems walking." (Deposition of Beasley, p. 59) The only testimony that Belcher provided about her bunions was that they "really got to bothering" her. (Deposition of Belcher, TR-49). Belcher provided no evidence that her bunions rendered her unable to walk or significantly restricted her ability to walk. (*See Carter,* 662 F.3d at 1143 (quoting *Johnson,* 594 F.3d at 1218) "[a]n impairment is substantially limiting when it renders an individual either unable or significantly restricted in her ability to perform a major life activity compared to the average person in the general population.") Therefore, Belcher has failed to articulate how bunions were an impairment or what major life activity they substantially limited.

Belcher's physical limitations and work restrictions due to her bunion surgery and rehabilitation were temporary in nature, and as such they do not establish a physical impairment under the ADA. See *Prathan,* 117 Fed. App'x at 651; *Pollard*, 281 F.3d at 467; *Borgialli*, 235 F.3d at 1290. In order to determine whether Belcher's temporary physical limitations substantially limited her ability to perform a major life activity, the court may consider the duration or expected duration of the impairment, and the permanent or long term impact of or resulting from the impairment. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(j)(2). Specifically, Belcher's impairments that came as a result of her surgery had a duration of about 5 months.

Under, the ADA an impairment with an actual duration of 6 months or less is transitory in nature. See 42 U.S.C. § 12102(3)(B). Thus, any impairments that came as a result of Belcher's surgeries were transitory and temporary in nature and, thus, cannot establish a physical impairment under the ADA.

Belcher could also be considered to have a disability protected under the ADA if she had a record of having a mental or physical impairment that substantially limited a major life activity. 42 U.S.C. § 12102(1). However, Belcher does not allege that she has any such record. Thus, the Court will forego a discussion of whether she has a disability protected under the ADA within the meaning of subsection (B).

This does not end the Court's inquiry as to whether Belcher was discriminated against under the ADA, because she has also alleged that even if she was not disabled, Smith regarded Belcher as "disabled in the major life activity of working," thereby qualifying Belcher as a person with a disability under subsection (C). Belcher argues that Smith regarded her as a person with a disability because Smith allegedly told Belcher she was taking too long to recover from her surgeries. To support this contention, Belcher cites Defendant's handbook definition of "serious health condition." Defendant's handbook states, "[a] "serious health condition," *for purposes of [Defendant's FMLA] policy* is an illness, injury, impairment, or physical or mental condition which involves… continuing treatment by a healthcare provider for any period requiring an absence from work for more than three calendar days." (Motion, Part 2 of Exhibit A, p. 18) (emphasis added). From that definition, Belcher argues that because Smith allegedly told Belcher her recuperation was taking too long, Smith assumed that Belcher was disabled in the major life activity of working. Belcher argues that if it was taking her too long to recover, Smith should have known that she had a serious medical condition.

Defendant argues that Belcher's argument is conclusory and confusing. The Court agrees. Defendant's handbook clearly states that its definition is only controlling for purposes of Defendant's FMLA policy. The handbook simply does not address whether that definition applies to whether an individual is disabled under the ADA. Not only does Belcher fail to explain how Defendant's handbook definition of "serious health condition" relates to Belcher being regarded as disabled under the ADA, but she also fails to offer any argument based on legal principles or authority as to why Smith may have regarded her as being disabled or any evidence that Smith actually regarded her as disabled.

Being regarded as having a disability under the ADA does not apply to impairments that are transitory and minor. A transitory impairment under the ADA is an impairment with an actual or expected duration of 6 months or less. 42 U.S.C. § 1202(3)(B). Defendant's handbook definition of a "serious medical condition" is any condition that requires "continuing treatment by a healthcare provider for any period requiring an absence from work for more than three calendar days." Thus, it is evident from the discrepancy between the definition of "serious medical condition" proffered by Defendant's handbook and what the ADA regards as an impairment that is transitory and minor that Defendant's definition of "serious medical condition" would not qualify a person as being regarded as disabled under the ADA.

Further, Belcher had her first surgery on August 31, 2010 and was cleared to return back to work on January 30, 2011. Thus, any impairment that came as a result of Belcher's surgeries could have only lasted approximately 5 months. Therefore, Belcher could not have been regarded as having a disability under the ADA because her impairment had an actual duration of less than 6 months and was transitory within the definition of the ADA.

**State Law Claims**

Belcher asserted state law claims of breach of implied contract, violation of the New Mexico Human Rights Act, intentional infliction of emotional distress, negligent or intentional misrepresentation, and prima facie tort on the Complaint. As set forth above, the Court has decided to grant summary judgment in favor of the Defendant for the federal claims alleged in the Complaint.

Further, because all federal claims have been resolved, the Court finds that it may properly decline to exercise supplemental federal jurisdiction over Belcher's remaining state law claims against Defendant pursuant to 28 U.S.C. § 1367(c)(3). *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir.1998). ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). However, because this case was not originally filed in federal court but was removed from state court, a proper disposition of Belcher's remaining state law claims may include a remand to state court rather than a dismissal. See *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."). Under the circumstances of this case, where discovery has been completed and the case is substantially ready for trial, the Court finds that an order of remand, rather than dismissal, "best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id*.

Therefore, Belcher's state law claims of breach of implied contract, violation of the New Mexico Human Rights Act, intentional infliction of emotional distress, negligent or intentional misrepresentation, and prima facie tort against Defendant will be remanded to the state court


from which they were removed, which is the Fifth Judicial District Court, County of Eddy, New Mexico.

## CONCLUSION

Belcher has failed to establish a prima facie case of discrimination under the ADA because she did not show, as a matter of law, that she has a physical or mental impairment that substantially limits any major life activities or that she was regarded as having such an impairment by Defendant. For these reasons, the Court finds that Defendant is entitled to summary judgment on the ADA claim asserted by Belcher under 42 U.S.C. § 1983. The Court also finds that Belcher's remaining state law claims against defendant should be remanded to state court.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment and Memorandum in Support filed by Carlsbad Medical Center, L.L.C. is granted as follows: the Court grants summary judgment on:

> (i) Belcher's Third Count for violation of the Americans with Disabilities Act;
>
> (ii) declines to exercise supplemental jurisdiction over the remaining state law claims set forth in the Complaint;
>
> (iii) and thus grants summary judgment in favor of the Defendant for the Complaint in its entirety.

**IT IS FURTHER ORDERED** that Belcher's actions against Defendant for Belcher's:

> (iv) First Count for breach of implied contract;
>
> (v) Second Count for violation of the NMHRA;
>
> (vi) Fourth Count for intentional infliction of emotional distress;
>
> (vii) Fifth Count for negligent or intentional misrepresentation; and
>
> (viii) Sixth Count for prima facie tort,

which are governed by New Mexico state law, are hereby remanded to the Fifth Judicial District Court from where they were removed.

DATED this 30th day of September, 2014.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE